FILED
2007 Aug-15  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANTONIO SAMUELS

       Plaintiff,

                              CV 05-J-2382-S

v.

BURLINGTON COAT
FACTORY OF
ALABAMA, LLC

       Defendant.

## <u>MEMORANDUM OPINION</u>

Pending before the court is the defendant's[1] motion for summary judgment (doc. 31), memorandum of law and evidence (docs. 32 and 33) and brief in support of said motion as amended (doc. 34).  The plaintiff failed to file a response, timely or otherwise, to the defendant's motion.

Plaintiff commenced this action by filing a complaint alleging the defendant discriminated against him on the basis of race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et.seq., ("Title VII")

---

[1]Burlington Coat Factory of Alabama, LLC, was formerly named Burlington Coat Factory Warehouse of North Birmingham, Inc., and Burlington Coat Factory Warehouse of Hoover, Inc. It was incorrectly named in the Complaint and First Amended Complaint as "Burlington Coat Factory Warehouse of Alabama, Inc.," "Burlington Coat Factory Direct Corporation," and "Burlington Coat Factory of North Alabama, Inc."

1

and 42 U.S.C. § 1981.  Upon consideration of the pleadings, memoranda of the

defendant and evidentiary submissions received, the court concludes that the

motion for summary judgment is due to be granted as no genuine issues of

material fact remain and the defendant is entitled to a judgment in its favor on all

of the plaintiff's claims as a matter of law.

## **FACTUAL BACKGROUND**

In the light most favorable to the plaintiff, the court finds the undisputed

facts of this case to be as follows:

The defendant operates retail stores in Hoover, Alabama ("the Hoover

store") and Crestwood, Alabama ("the Crestwood store").  Plaintiff dep. at 12-13.

The defendant's stores generally operate with a store manager, two assistant

managers, and various department heads.  Id. at 219-220.  One assistant manager

is responsible for operations and the other assistant manager is responsible for

merchandising.  Id.

In April of 2004, the plaintiff applied for a management position in the

Hoover store.  Plaintiff depo. at 91-94; Exhibit 2 thereto.  On the application, the

plaintiff listed his salary from his previous job as $32,000.[2]  Plaintiff depo. at

---

[2]The plaintiff was unemployed at the time he applied for the job at the defendant's store
and had been unemployed for the previous six or seven months.  Plaintiff dep. at 29.

Exhibit 2 thereto.  In response to a question about his expected salary, the plaintiff answered that it was negotiable.  Plaintiff depo. at 159; Exhibit 2 thereto.  The defendant hired the plaintiff on May 4, 2004 as an assistant manager in charge of operations in the Hoover store at a starting salary of $36,500.  Plaintiff depo. at 182-183.

In the fall of 2004, the Crestwood store was operating without a store manager and with only one assistant manager, Willie Drake-Sims.  Brawner depo. at 253, 259 - 260; Lange depo. at 23 - 24.  Gary Yates, who was the store manager of the Hoover store and aware of the situation at the Crestwood store, suggested to Dick Lange, the district manager responsible for the Hoover store and the Crestwood store, that the Hoover store could do without the plaintiff's help during the holiday season if he was needed at the Crestwood store.  Lange depo. at 43 - 47; Brawner depo. at 253, 259 - 261.  Lange decided to transfer the plaintiff to the Crestwood store to assist with the busy holiday season.  Id.

The plaintiff was informed of the defendant's decision to transfer him by Laurie Ann Bardin, the merchandising manager at the Hoover store.  Plaintiff depo. at 12 - 13.  Ms. Bardin told the plaintiff that he was being sent to the Crestwood store because he was black and she felt plaintiff could identify with blacks better.  Id. at 12 - 13, 18, 60 - 62.  The plaintiff's transfer to the Crestwood

3

store was initially intended to be temporary.  Id. at 15 - 16; Lange depo. at 43.

Indeed, the plaintiff believed that the move was not permanent and he was just

going to "help out."  Samuels depo. at 15.

While the plaintiff was helping out at the Crestwood store, Annie Kearby

was hired as the operations manager at the Hoover store on or about January 27,

2005.  Lange depo. at 54 - 55.  Annie Kearby was a former assistant manager at

the Hoover store who left near the end of 2003 to take a higher paying job.[3]

Kearby affidavit, ¶ 3.

In January of 2005, Lange decided that the plaintiff's transfer to the

Crestwood store would become permanent.  Lange depo. at 55; plaintiff depo. at

218.  On March 15, 2005, Lange hired Holly McGee to fill the vacant store

manager position at the Crestwood store.  Lange depo. at 63, Exhibit 27 thereto.

In April, shortly after McGee was hired, the defendant's corporate office decided

to change the typical store management structure in low volume or under

producing stores.  Brawner depo. at 52 - 56, Lange affidavit, ¶ 5.  The defendant's

corporate office decided that stores with low sales volume would operate with no

more than a store manager, an assistant manager, and seven department managers.

---

[3]The plaintiff was hired to fill the vacancy created when Ms. Kearby left in 2003.  Lange depo. at 56.

Brawner depo. at 52 - 56; Lange affidavit, ¶ 6.  Thus, one assistant manager

position was eliminated.  Subsequently, the Crestwood store was reclassified as a

low volume store and Dick Lange was directed to convert the store to the new

management structure.  Lange affidavit, ¶ 7 & 10.

Low volume stores, such as the Crestwood store, could be restructured by

not filling vacancies, layoffs, demotions, and transfers.  Lange affidavit, ¶ 9.

However, employees were only eligible to be demoted or transferred if the

employee received a "3 - Meets Expectations" rating or better on their most recent

annual performance evaluation.[4]  Id.  On his 2004 performance evaluation, the

plaintiff had received a "4 - Needs Improvement" rating.  Lange affidavit, ¶ 3.

The plaintiff's overall assessment was "Future potential is questionable - demotion

or separation possible unless there is significant improvement."  Lange affidavit, ¶

3.  Since the plaintiff received a 4 on his last evaluation, he was not eligible to be

transferred or demoted as part of the restructuring.  Lange affidavit, ¶ 13.

In order to accomplish the reorganization of the Crestwood store, Lange

reviewed all the managers in the Hoover and Crestwood stores.  Lange affidavit, ¶

11.  The assistant managers at the Hoover store, Bardin and Kearby, had been with

_____

[4]BCF conducts annual performance evaluations of each employee.  The employee is given
an overall score on a scale of 1-5 with 5 being the lowest score.  Lange affidavit, ¶ 3.

the defendant for a longer time than the plaintiff.[5]  Id.  McGee, the new store manager at the Crestwood store, had experience managing a store with ten million dollars in sales volume and a merchandising background.  Id.

The assistant manager in charge of operations at the Crestwood store, Sims, had also been at the Crestwood store for far longer than the plaintiff.  Lange affidavit, ¶ 12.  Furthermore, Sims received a 3 rating on her most recent performance evaluation.  Id.  Dick Lange determined that the restructuring needed to involve the plaintiff and since the plaintiff could not be transferred or demoted, the plaintiff was terminated.  Id., ¶ 13.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against

---

[5]As part of her agreement to return to BCF in 2005, Ms. Kearby was given credit for the previous six years that she worked for the defendant.  Kearby dep. at 80.

> a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which
> that party will bear the burden of proof at trial.  In such a situation,
> there can be no genuine issue as to any material fact, since the
> complete failure of proof concerning an essential element of the non-
> moving party's case necessarily renders all other facts immaterial.

Celotex Corp. 477 U.S. at 322-23.  The party moving for summary judgment

always bears the initial responsibility of informing the court of the basis for its

motion and identifying those portions of  the pleadings or filings which it believes

demonstrates the absence of a genuine issue of material fact.  Id. at 323.  The

burden then shifts to the nonmoving party to "go beyond the pleadings and by ...

affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file' designate 'specific facts showing that there is a genuine issue for trial.'"

Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e).  In meeting this burden the

nonmoving party "must do more than simply show that there is a metaphysical

doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a

"genuine issue for trial."  Fed. R. Civ. P.  56(c); Matsushita, 475 U.S. at 587, see

also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The nonmovant

must "demonstrate that there is indeed a material issue of fact precluding summary

judgment." Clark v.  Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence

and factual inferences arising therefrom in the light most favorable to the

nonmoving party.  See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

The substantive law will identify which facts are material and which are irrelevant.

Anderson, 477 U.S. at 248.  All reasonable doubts about the facts and all

justifiable inferences are resolved in favor of the nonmovant.  Fitzpatrick v. City

of Atlanta, 2 F.3d 1112, 1115 (11th Cir.1993).  A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted.  Id. at 249.  The basic

issue before the court on a motion for summary judgment is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law."  Id. at 251-252.

## LEGAL ANALYSIS

Plaintiff asserts that the above facts constitute race discrimination under

Title VII and 42 U.S.C. § 1981.[6]  Specifically, plaintiff asserts that the defendant

discriminated against him because of his race in relation to (1) the decision to

---

[6]Claims brought pursuant to § 1981 are analyzed under the same framework as Title VII claims.  Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n. 11 (11th Cir. 2000); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Therefore, Plaintiff's Section 1981 and Title VII claims will be considered together.

transfer the plaintiff from the Hoover store to the Crestwood store, (2) the plaintiff's pay, and (3) the termination of his employment.  Plaintiff depo. at 12, 23, 30.

Plaintiff does not specify whether his evidence is meant to constitute direct or circumstantial evidence of discrimination.  In cases involving circumstantial evidence of discrimination under Title VII and 42 U.S.C. § 1981, courts use the analytical framework set forth in  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which requires the plaintiff first to demonstrate a *prima facie* case of discrimination.  Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248; 254 (1981); Combs v. Plantation Patterns, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action.  Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir.1991), cert. denied, 502 U.S. 1058 (1992)(quoting Grigsby v. Reynolds Metals Co., 821

9

F.2d 590, 596 (11th Cir.1987)).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case.  Burdine, 450 U.S. at 255, n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff.  Harris, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside the protected classification more favorably.  Holifield v. Reno, 115 F.3d 1555, 1562-63 (11th Cir.1997); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000).

In cases involving direct evidence of discrimination, the plaintiff still must show that an adverse employment action was taken.  Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1230 n. 34 (11th Cir. 2001).

**I. The Plaintiff's Transfer**

The plaintiff's transfer did not violate Title VII or Section 1981 because no adverse employment action was taken.  "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1238 (11th Cir. 2001) (citing <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1456 (11th Cir. 1998)).  "[T]o support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." <u>Davis</u>, 245 F.3d at 1239.  An objective standard is applied in determining whether an action is adverse.  <u>Doe v. Dekalb County Sch. Dist.</u>, 145 F.3d 1441, 1452 (11th Cir. 1998).  Therefore, the plaintiff's subjective beliefs and preferences are irrelevant to this analysis.

"A transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige, or responsibility." <u>Hinson v. Clinch County, Georgia Bd. of Educ.</u>, 231 F.3d 821, 829 (11th Cir. 2000).  Following his transfer, the plaintiff's salary remained the same.  The plaintiff had the same responsibilities at the Crestwood store as he did at the Hoover store - he was in charge of operations.[7]  It

---

[7]When the plaintiff was transferred to the Crestwood store, Sims was technically the operations manager.  However, since she was the only manager at the Crestwood store she had assumed the duties of the store manager.  The plaintiff was responsible for all of the

should also be noted that the Crestwood store is sixteen miles closer to the plaintiff's home in Huffman, Alabama.  Finally, the plaintiff does not allege that his position at the Crestwood store was any less prestigious than his former position at the Hoover store.  The plaintiff cannot make the *prima facie* showing of discrimination because he did not suffer a serious or material in the terms, conditions, or privileges of employment.

Plaintiff alleged in his deposition that Laurie Ann Bardin made racist comments to him concerning his transfer to the Crestwood store.  Assuming these statements were made, they would constitute direct evidence of discrimination.  However, since no adverse employment action was taken on the plaintiff, whether Ms. Bardin made the alleged comments is immaterial.  The plaintiff cannot prove a violation of Title VII or Section 1981 through circumstantial or direct evidence because there was no adverse employment action taken.

## II.  The Plaintiff's Pay

Plaintiff is unable to make a *prima facie* showing of discrimination with regard to his pay because there are no similarly situated employees outside of the protected class who were treated more favorably.  To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show

---

responsibilities of the operations manager.  Lange at 49 - 51.

that he and the employees are similarly situated in all relevant aspects.  Holifield,

115 F.3d at 1562.  "The comparator must be nearly identical to the plaintiff to

prevent courts from second-guessing a reasonable decision by the employer."

Hammons v. George C. Wallace State Cmty. Coll., 174 Fed. Appx. 459, 462 (11th

Cir. 2006).  If a plaintiff fails to show the existence of a similarly situated

employee, summary judgment is appropriate when no other evidence of

discrimination is present.  Holifield, 115 F.3d at 1562.

Plaintiff compares himself in terms of his pay to Holly McGee, Garry Yates,

Laurie Ann Bardin, and Annie Kearby.  Samuels dep. at 23-26, 164-65.  None of

these comparators are "nearly identical" to the plaintiff.  These four employees

were either in an entirely different position than the plaintiff, or they demanded a

higher salary in order to leave their current job.   Holly McGee, a Caucasian

female, is the former store manager at the Crestwood store that was hired just

before the plaintiff was terminated.  Plaintiff dep. at 115, 125.  Garry Yates, a

Caucasian male, is a former store manager of the Hoover store.  Id. at 98-99, 113-

114.  Ms. McGee and Mr. Yates are not similarly situated to the plaintiff because,

as store managers, they had different responsibilities than the plaintiff did as an

assistant manager.

Laurie Ann Bardin and Annie Kearby are not similarly situated to the

plaintiff because they demanded a higher salary in order to leave their current jobs to work for the defendant.  Laurie Ann Bardin, a Caucasian female, was the assistant manager in charge of operations at the Hoover store.  Bardin affidavit, ¶ 2.  When Ms. Bardin applied to the defendant she was working as an assistant store manager at TJ Maxx, where she made $41,000 per year.  Id.  The defendant offered Ms. Bardin an initial salary of $44,500, which she accepted.  Id.  Ms. Bardin would not have left her job with TJ Maxx if the defendant would not have offered her a higher salary.  Id.

The same is true with Ms. Kearby.  Ms. Kearby, a Caucasian female, began her employment with the defendant in 1998 as an assistant store manager at the Hoover store.  Kearby affidavit, ¶ 2.  When Ms. Kearby applied to work for the defendant she was working as an assistant store manager at Service Merchandise where she made $31,000 per year.  Id.  When Ms. Kearby applied for the job with the defendant, she made a salary demand of $38,000, which defendant met.  Id.  Like Ms. Bardin, Ms. Kearby would not have left Service Merchandise if defendant had not met her salary demand.  Id.  Subsequently, Ms. Kearby was given a raise to $42,000 to keep her from accepting an offer to work at Staples for $41,000.  Id.  In 2003, Ms. Kearby left the Hoover store to accept a higher paying

job with DSW Shoes.[8]  Id. ¶ 3.  In 2005, Ms. Kearby returned to the Hoover store

for a salary increase.  Id.

       The defendant was required to pay Ms. Bardin and Ms. Kearby a higher

salary to recruit them to the defendant's store.  The plaintiff, on the other hand,

was unemployed at the time he applied for a job with the defendant.  Plaintiff dep.

at 29; Exhibit 2 thereto.  Unlike Ms. Kearby and Ms. Bardin, the plaintiff did not

make a salary demand on his application.  Id. at 159.  Instead, the plaintiff said

that his salary was negotiable.  Id.  Despite the fact that plaintiff did not make a

specific salary demand on his application, the defendant offered the plaintiff an

initial salary of $36,500 - $4,500 more than the salary he earned at his most recent

job.  Id. at 182, exhibit 2 thereto.  The corporate representative for the defendant,

Todd Brawner, testified in his deposition that it was not common for an applicant

who was unemployed to receive a higher salary offer than his most recent job.

Brawner at 253.  Contrary to the plaintiff's claims, the plaintiff was treated better

than other unemployed applicants.

        Assuming arguendo that Ms. Bardin and Ms. Kearby are similarly situated

to the plaintiff, the defendant had legitimate, non-discriminatory reasons for the

_____

       [8]The plaintiff was originally hired to fill the vacancy at the Hoover store created when
Ms. Kearby left BCF to work for DSW Shoes.  Lange dep. at 56.

differences in the salaries of the plaintiff, Ms. Bardin and Ms. Kearby.  The

salaries offered to Ms. Bardin and Ms. Kearby reflected the premium which the

defendant had to pay in order to recruit them to the defendant's store.  Both Ms.

Kearby and Ms. Bardin stated in their affidavits that they would not have accepted

a position with the defendant if they had not been offered a higher salary than they

were already making.  Kearby affidavit, ¶ 2; Bardin affidavit, ¶ 2.  The court finds

that these are legitimate, non-discriminatory reasons for the higher salaries of Ms.

Bardin and Ms. Kearby.

Finally, the plaintiff cannot show that the reasons offered by the defendant

are a mere pretext for racial discrimination.  The plaintiff has offered no evidence

beyond mere conclusory statements in his deposition that he was discriminated

against in relation to his pay.

## III. The Plaintiff's Termination

As with the plaintiff's pay, the plaintiff has failed to prove that there are any

similarly situated employees outside of the protected class who were treated more

favorably than the plaintiff.  The plaintiff was terminated as part of the

restructuring of low volume stores that included eliminating one assistant

management position.  In restructuring the Crestwood store, Dick Lange reviewed

all of the managers at the Hoover store and the Crestwood store.  Lange affidavit,

¶ 11.  This review included Laurie Ann Bardin, Annie Kearby, Holly McGee, and Willie Drake Sims.  None of these employees are "nearly identical" to the plaintiff.  These four employees either had a longer tenure with the defendant, had more experience than the plaintiff, or had received better performance evaluations.  Annie Kearby, the former Assistant Manager in charge of operations at the Hoover store, was given credit for her prior years of service with the company.  Lange affidavit, ¶ 11.  The other Assistant Manager at the Hoover store, Laurie Ann Bardin, was also a longer term employee.  Id.  Both Kearby and Bardin were strong performers.  Id.  McGee, the new Store Manager in Crestwood, had strong manager experience, basic operational skills, and a merchandising background.  Id.  McGee had previously managed a store with a $10 million sales volume.  Id.  Sims had received a "3 - Meets Expectations" on her last performance evaluation and had worked at the Crestwood store far longer than Samuels.  Id. at ¶ 12.

Even if the plaintiff could make a *prima facie* case of disparate treatment, the reasons offered by the defendant for the plaintiff's termination are legitimate and non-discriminatory.  Under the restructuring plan, only employees who had received a three rating or better were eligible to be demoted or transferred.  Since the plaintiff received a 4 rating on his most recent evaluation, the plaintiff was ineligible to be demoted or transferred.

Finally, the plaintiff has not offered any evidence beyond mere conclusory statements that the defendant's reasons were a pretext for discrimination. Furthermore, the plaintiff was hired and fired by the same individuals.  When the same actor hires a person within a protected class, and then later fires that same person, it is difficult to impute to him an invidious motivation that would be inconsistent with the decision to hire.  Curtis v. Teletech Customer Care Management, Inc., 208 F. Supp. 2d 1231, 1243 (N.D. Ala. 2002), citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2nd Cir. 2000).

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issues of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**.  The plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate order.

**DONE** and **ORDERED** this the 15th  day of August, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

18